UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.

D-1   ALI ABDUL KARIM FARHAT
       a/k/a Allen Farhat,
D-2   ABDULAMIR BERRO
       a/k/a Abe Berro, a/k/a "Abed,"
D-3   HASSAN ABDUL KARIM FARHAT,
D-4   AKRAM ABDUL KARIM BERRO,
D-5   JAMAL SAADALLAH BERRO,
D-6   HUSSEIN A. BERRO,
D-7   ABDUL HALIM BERRO
       a/k/a Abdulhaum Berro,
D-8   BILAL EL-SABLANI,
D-9   NOURA BERRO,
D-10  SAMI AHMAD BERRO,
D-11  ZEINAB BERRO,
D-12  SADEK BERRO
       a/k/a Sam Berro,
D-13  AMIRA ALI FARHAT
D-14  ABDUL KARIM AKRAM BERRO,
D-15  HOUDA MOHAMAD BERRO,
D-16  LINA REDA
       a/k/a LINA BERRO
D-17  ALMIRE ALI-SADEK BERRO,

           Defendants.

_____/

CRIMINAL NO. 04-80370

HONORABLE JOHN CORBETT O'MEARA

VIOLATIONS:

  18 U.S.C. § 157:  BANKRUPTCY FRAUD

  18 U.S.C. § 371:  CONSPIRACY

  18 U.S.C. § 1001: FALSE STATEMENTS

  18 U.S.C. § 1341: MAIL FRAUD

  18 U.S.C. § 1344: BANK FRAUD

  18 U.S.C. § 1349: (BANK FRAUD
                    CONSPIRACY)

  18 U.S.C. § 1956: MONEY LAUNDERING

  18 U.S.C. § 1957: MONEY LAUNDERING

  18 U.S.C. § 2: AIDING AND ABETTING

# FIRST SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At all times pertinent to this Indictment:

1. "Bust out" fraud describes a scheme whereby a credit card holder inflates the value of his account by submitting a non-sufficient fund check or other worthless payment, and then makes purchases or takes cash advances with the inflated credit balance on the account. To evade collection, the account holder may leave the jurisdiction or file for bankruptcy.

2. The specific steps in "busting out" a credit card account are typically as follows:

a.      The subject obtains a number of bank and merchant credit cards. He usually uses his true name and identity to give the appearance of legitimacy to the credit accounts. The subject may falsely inflate his income or make false representations regarding employment in order to obtain a credit card at the highest possible credit limit.

b.      The subject may use the account over a period of time, incurring charges and making regular payments, in order to establish credit-worthiness and to lull credit card companies into increasing the credit limit on the card.

c.      After incurring charges on the account that usually push the card to its credit limit, the subject makes a bogus payment, usually a large payment that appears to significantly clear the balance owing on the credit card. That payment may be with a check or via an electronic or phone payment drawn on a bank account with

2

insufficient funds or with a convenience check from other credit card accounts that will never be paid. The payment is credited immediately to the account by the credit card companies, who are unaware at the time that the payment is drawn against insufficient funds. The credit available on the credit card account is thus fraudulently inflated, in some instances for the period of a billing cycle, until the credit card company becomes aware that the check or other form of payment has been declined for insufficient funds.

d.     Before the credit company becomes aware that the payment made was bogus, the subject makes as many charges as he can, until the credit card stops being honored and the account had been "busted out."

e.     Typically, the subjects employ three different methods when making the fraudulent charges, either shortly before or after the bogus payment, or both:

(1) If the subjects have merchant credit cards, they may use the inflated credit cards to purchase large quantities of merchandise, as well as gift cards. These items are then frequently resold for cash at one hundred percent profit.

(2) If they have non-merchant credit cards, such as VISA or MasterCard accounts, they may use the inflated credit cards to obtain cash advances at casinos and banks.

(3) The subjects also obtain cash by making charges with their credit cards through "collusive merchants," businesses that agree to process charges on the subjects' credit cards for cash, with no actual sale occurring, in exchange for a percentage of the money paid to the merchants by the credit card companies.

3

f.    After charges are made on the card, the check submitted for payment to the credit card company by the subject is then returned as an "account closed" or "insufficient funds" check.

g.    The subjects then evade any efforts of the banks and credit card companies to collect payment by either fleeing the country or declaring bankruptcy.

3. Advanta Bank Corp., Associated Bank, Associates National Bank, Capital One Bank, Chase Bank, Citibank, Direct Merchants Bank, Discover Bank, First USA Bank, N.A., FleetBoston Financial Corp., Household Bank, Household Credit Services, N.A., JP Morgan Chase Bank, MBNA America Bank, National City Bank, People's State Bank, Retailer's National Bank, Southport Bank, Standard Federal Bank, Wachovia Bank, N.A., and World Savings Bank are all financial institutions as defined by Title 18, United States Code, Section 20, whose deposits are insured by the Federal Deposit Insurance Corporation.

4.    ABN AMRO Mortgage Group, Inc. is an affiliate of Standard Federal Bank.

5. At all relevant times between March 1999 and January 2004, ALI ABDUL KARIM FARHAT owned and operated Sigma Distribution Inc. (hereafter "Sigma"), currently located at 24512 Michigan Avenue, Dearborn MI.  Sigma is a distributor of fragrances and cosmetics.

6. At all relevant times between March 1999 and January 2004, ABDULAMIR BERRO owned or operated Byblous Distribution Investment, Inc., located at 14241 Michigan Avenue, Dearborn, Michigan.  Byblous Distribution Investment, Inc., is a cigarette wholesale business and also operates under the name of "BDI."

7. On October 18, 2000, ABDULAMIR BERRO filed a Certificate of Assumed Name

4

with the State of Michigan indicating that Byblous Distribution Investment, Inc., would operate

under the name of "Budget Tele-Com."

    8. All dates in this indictment are alleged to be "on or about" the specific date stated.

## COUNT ONE
### (18 U.S.C. § 371 – CONSPIRACY)

| | |
|---|---|
| D-1 | ALI ABDUL KARIM FARHAT<br>a/k/a Allen Farhat, |
| D-2 | ABDULAMIR BERRO<br>a/k/a Abe Berro, a/k/a "Abed," |
| D-3 | HASSAN ABDUL KARIM FARHAT, |
| D-4 | AKRAM ABDUL KARIM BERRO, |
| D-5 | JAMAL SAADALLAH BERRO, |
| D-6 | HUSSEIN A. BERRO, |
| D-7 | ABDUL HALIM BERRO<br>a/k/a Abdulhaum Berro, |
| D-8 | BILAL EL-SABLANI, |
| D-9 | NOURA BERRO, |
| D-10 | SAMI AHMAD BERRO, |
| D-11 | ZEINAB BERRO, |
| D-12 | SADEK BERRO<br>a/k/a Sam Berro |

    1. The General Allegations are incorporated into this count by reference.

    2. From March 1999 until January 2004, in the Eastern District of Michigan, Southern Division, defendants ALI ABDUL KARIM FARHAT, ABDULAMIR BERRO, HASSAN ABDUL KARIM FARHAT, AKRAM ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO, HUSSEIN A. BERRO, ABDUL HALIM BERRO, BILAL EL-SABLANI, NOURA BERRO, SAMI AHMAD BERRO, ZEINAB BERRO and SADEK BERRO did knowingly combine, conspire and agree with each other and persons known and unknown to the grand jury:

5

a.      to violate Title 18, United States Code, Section 1344, Bank Fraud, by knowingly executing and attempting to execute a scheme and artifice to defraud a financial institution and to obtain money, funds, or other property owned by, or in the custody or control of, federally insured financial institutions by means of material false and fraudulent pretenses, representations and promises;

b.      to violate Title 18, United States Code, Section 1341, Mail Fraud, by knowingly placing and causing to be placed in an authorized depository for mail, for delivery by the United States Postal Service and private or commercial interstate mail carriers, checks representing payments on credit cards, for the purpose of executing and in furtherance of a scheme and artifice to defraud, and to obtain money or property by means of material false and fraudulent pretenses, representations and promises;

c.      to violate Title 18, United States Code, Sections 157(1), Bankruptcy Fraud, by filing with the United States Bankruptcy Court for the Eastern District of Michigan, a petition under Title 11 of the United States Code, Bankruptcy Code, in order to execute a scheme and artifice to defraud and eliminate debts;

d.      to violate Title 18, United States Code, Section 152(1) and (7), Concealment Of Assets and Fraudulent Transfer, by knowingly and fraudulently transferring or concealing assets and property in contemplation of a case under Title 11 of the United States Bankruptcy Code and by knowingly and fraudulently concealing property from creditors and the bankruptcy trustee in connection with a bankruptcy case.

6

## OBJECTS OF THE CONSPIRACY

3. The defendants conspired and agreed with each other and others known and unknown to the grand jury 1) to defraud creditors by busting out credit card accounts; 2) to obtain cash and merchandise at no cost by making charges on credit cards for which payment would never be made; 3) to evade collection efforts by creditors by declaring bankruptcy; 4) to transfer and conceal assets, property and the proceeds of their fraudulent activity, in contemplation of filing for bankruptcy; and 5) to conceal assets, property and the proceeds of their fraudulent activity from creditors and the trustee in their bankruptcy cases.

## MANNER AND MEANS

The manner and means by which the conspirators sought to accomplish the objects of their conspiracy included, among others, the following:

4. The defendants and their co-conspirators opened numerous credit accounts in their own names using various means to create the appearance of credit worthiness, such as inflating annual income on the credit card applications.

5. The defendants and their co-conspirators submitted monthly payments to the credit card companies over a period of time in order to maintain good credit standing until the time of the bust out and to induce creditors into extending larger and larger lines of credit.

6. The defendants and their co-conspirators aided each other in making monthly payments for this purpose, sometimes by processing credit card charges at Sigma and BDI in exchange for cash that would be applied to the credit card bills.

7. The defendants and their co-conspirators also made monthly payments from proceeds of home refinancing loans, fraudulently obtained, to maintain the credit cards in good standing

7

until the time of the bust out.

8. Typically, once the balance on the credit card was at its limit, the defendants and their co-conspirators submitted a bogus payment – a worthless check, electronic or other form of payment – to the credit card company which appeared to significantly reduce or eliminate the amount owing on the card balance, thereby fraudulently inflating the credit available on the card.

9. The defendants and their co-conspirators knowingly sent bogus checks falsely representing payments on credit cards to the credit issuing companies, using the United States mail or commercial carriers.

10. Before the credit card company became aware of the worthless nature of the payment, the defendants and their co-conspirators made charges and aided one another in making charges at Sigma, BDI, and other establishments, usually up to or over the limit of the fraudulently inflated balance, knowing they would never pay for these charges.

11. When charges were processed at Sigma and BDI, the defendants and their co-conspirators typically received cash, rather than merchandise as in a legitimate credit card transaction with a merchant. In other instances, the defendants and their co-conspirators would receive merchandise from Sigma and BDI that they would then sell, at significant profit and no cost since there was no intent to pay the credit card company for the purchase.

12. The credit card company would transfer funds to Sigma or BDI, usually through a merchant service provider, in the amount of the charges to the credit cards of the defendants and their co-conspirators. In return for processing the bogus charges at Sigma and BDI, ALI ABDUL KARIM FARHAT, ABDULAMIR BERRO, and HASSAN ABDUL KARIM FARHAT would keep a portion of the money fraudulently obtained from the credit card companies.

8

13.  The bogus payments made by the defendants and their co-conspirators on the credit cards were ultimately declined for insufficient funds and further payments on the credit cards were not forthcoming.

14.  The defendants and their co-conspirators then took deliberate steps to evade collection efforts by declaring bankruptcy so that creditors could not attach assets or otherwise collect on the amounts owed to them.  In addition, the defendants and their co-conspirators concealed and transferred assets in contemplation of bankruptcy so creditors could not attach those assets.  For the same reasons, the defendants and their co-conspirators concealed the extent of their assets and property in their bankruptcy proceedings.  As a result, their creditors suffered significant losses from unpaid and uncollectible debts.

## OVERT ACTS

In furtherance of the conspiracy and to effect its objects, the defendants, and others known and unknown to the Grand Jury, performed overt acts, including, but not limited to the following:

15.  During the course of the conspiracy, from March 1999 to January 2004, ALI ABDUL KARIM FARHAT acted as a collusive merchant for the defendants and their co-conspirators in the bust out of numerous credit cards.

16.  During the course of the conspiracy, from March 1999 to January 2004, ABDULAMIR BERRO acted as a collusive merchant for defendants and their co-conspirators in the bust out of numerous credit cards.

17.  During the course of the conspiracy, ALI ABDUL KARIM FARHAT often processed credit charges for the conspirators through his merchant account at Sigma, sometimes with the assistance of HASSAN ABDUL KARIM FARHAT.  On paper, the charges appeared to

be a purchase of merchandise, but in fact no purchase was made. Relying on the integrity of the merchant transaction, the victim credit company paid ALI ABDUL KARIM FARHAT the amount of money that the conspirator had charged. ALI ABDUL KARIM FARHAT took a percentage of the money for himself and gave the rest to the conspirator who made the bogus charge. The victim credit card company was never re-paid. Similarly, ABDULAMIR BERRO processed bogus charges for conspirators through his businesses, BDI and Budget Tele-Com, thus defrauding the credit companies while keeping a percentage of the proceeds for himself. In some instances, ALI ABDUL KARIM FARHAT and ABDULAMIR BERRO would provide merchandise to the conspirator who would then resell the merchandise at significant profit and at no cost since the credit card charge would never be paid.

18. On occasion, the conspirators used the cash they obtained from ALI ABDUL KARIM FARHAT and ABDULAMIR BERRO to meet the minimum monthly payments on their credit accounts, to maintain the accounts in good standing and to induce the credit companies to increase the credit limit on the account until the conspirators were ready to bust them out.

19. During the course of the conspiracy, ALI ABDUL KARIM FARHAT and ABDULAMIR BERRO jointly participated and facilitated the pre-bust out and bust out phase of numerous credit cards held by defendants and co-defendants, including the Citibank Associates National Bank credit card of JAMAL SAADALLAH BERRO, account number 4018-0401-8064-4716.

     a.     On December 20, 2000, a charge at BDI was posted to this account in the amount of $4,700.

     b.     Thereafter, on six separate occasions, from March 7, 2001, through September 22,

2001, ABDULAMIR BERRO wrote and submitted six checks as the monthly payments on JAMAL SAADALLAH BERRO's account.

c.  On December 21, 2001, JAMAL SAADALLAH BERRO submitted a bogus check in the amount of $3,000 as payment on the balance of $3,141.42 owed on the account. The apparently available credit on the card after payment was posted was $3,088.58

d.  On December 22, 2001, a credit card charge at ALI ABDUL KARIM FARHAT's business, Sigma, in the amount of $2,800 was posted to the account.

e.  On January 24, 2002, the $3,000 check submitted by JAMAL SAADALLAH BERRO was returned for insufficient funds.

f.  This account was subsequently closed for non-payment with an unpaid balance of $6,176.87, nearly twice the credit limit of the account.

20. In furtherance of the conspiracy, AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO established multiple credit card accounts with a wide variety of banks, retailers, and other issuers of credit cards. AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO then systematically busted out those credit cards at Sigma, BDI and other establishments, presenting bogus checks and other forms of payment to falsely inflate the apparently available credit limit and then withdrawing the apparently available credit balance through cash advances and purchases of merchandise, never intending to pay for those charges to their credit cards. With the knowledge and assistance of ALI ABDUL KARIM FARHAT and other defendants and co-conspirators, AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO made or caused to be made numerous charges at Sigma in busting out

11

their credit cards, receiving cash amounts for those charges.

21. Between approximately December 2001 and January 2002, ALI ABDUL KARIM

FARHAT, AKRAM ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO and other

defendants and co-conspirators  processed and caused to be processed approximately nineteen

transactions at Sigma on multiple credit cards of AKRAM ABDUL KARIM BERRO and

JAMAL SAADALLAH BERRO, for a total amount in excess of approximately $65,200,

knowing that AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO never

intended to pay for those credit card charges, each of which is set forth below and constitutes a

separate overt act:

| | Account Holder | Credit Card | Credit Card Account No. | Date of Bogus Payment | Sigma Charge Date and Amount | Date Payment Returned NSF | Amount of Loss |
|---|---|---|---|---|---|---|---|
| a. | Akram Berro | First USA Bank | 4085-6700-0076-8283 | 12/20/01 | 12/21/01, $6,940 | 12/27/01 | $17,872 |
| b. | Akram Berro | Chase Visa | 5422-2830-1904-0568 | 12/20/01 | 12/21/01, $1,980 | 12/28/01 | $5,154.26 |
| c. | Jamal Berro | Avanta Business | 5477-5397-5616-0008 | 12/17/01 | 12/21/01, $2,900 $3,300 | 12/26/01 | $14,329.07 |
| d. | Akram Berro | Sears | 5121-0717-3724-5972 | Unknown | 12/21/01, $2,000 $3,580 | 12/19/01 | $14,829.86 |
| e. | Jamal Berro | First National Bank of Omaha | 4418-0290-0118-1731 | 12/22/01 | 12/22/01, $2,700 $3,000 | 12/31/01 | $14,505.07 |
| f. | Jamal Berro | JP Morgan Chase Visa | 4071-5830-1003-5682 | 12/21/01 | 12/22/01, $1,700 | 12/31/01 | $5,432.08 |
| g. | Akram Berro | The Edvance Card-Fleet | 4305-5006-0202-7719 | 12/27/01 | 12/28/01, $3,600 $4,900 | 01/02/02 | $24,063.56 |

| b. | Jamal Berro | The Edvance Card-Fleet | 5447-1700-2321-2963 | 12/27/01 | 12/28/01, $4,050 | 01/03/02 | $10,972.77 |
|---|---|---|---|---|---|---|---|
| i. | Jamal Berro | Citi Card | 5424-1803-9434-3872 | 12/27/01 | 12/29/01, $3,500 | 01/07/02 | $4,471.35 |
| j. | Akram Berro | National City Bank Visa | 4311-9660-1406-2838 | 12/27/01 | 12/29/01, $4,800 | 01/18/02 | $14,358.27 |
| k. | Jamal Berro | AT&T Universal Mastercard | 5491-1303-3724-8850 | 01/11/02 | 01/05/02, $2,900 $3,540 | 01/26/02 | $14,909.58 |
| l. | Jamal Berro | National City Bank | 4489-0007-03210-5659 | 01/12/02 | 01/14/02, $1,900 | 01/23/02 | $7,998.95 |
| m. | Jamal Berro | Household Bank | 5491-0700-0143-7357 | 01/11/02 | 01/18/02, $4,280 | 01/18/02 | $9,835.45 |
| n. | Jamal Berro | MBNA America Bank | 5490-9937-8478-4292 | 01/17/02-01/31/02 (multiple) | 01/18/02, $3,680 | 01/17/02 - 02/08/02 | $16,288.68 |

22. In order to avoid payment and efforts by creditors to collect payment for these charges, AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO jointly filed or caused to be filed a voluntary petition for bankruptcy on May 23, 2002, under Chapter 7 of Title 11, United States Code, in United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and specifically requested relief from the balances owed on these credit cards.

23. In furtherance of the conspiracy, AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO sought to evade payment and collection efforts for balances owed on seventy-six credit cards they had failed to pay or busted out by claiming those balances in their bankruptcy petition. Twenty of those credit cards were busted out at the businesses of ALI ABDUL KARIM FARHAT and ABDULAMIR BERRO.

24. As of the date of their bankruptcy filing, AKRAM ABDUL KARIM BERRO and

JAMAL SAADALLAH BERRO had incurred and sought relief from an outstanding unpaid credit card debt of approximately $440,000, out of a total bankruptcy amount of $521,657.

25. In furtherance of the conspiracy, ALI ABDUL KARIM FARHAT participated and assisted in the purchase of property located at 25800 Labana Woods, Taylor, Michigan, in which the wife of ALI ABDUL KARIM FARHAT, AMIRA ALI FARHAT, was a nominee buyer and fraudulently concealed that AKRAM ABDUL KARIM BERRO And JAMAL SAADALLAH BERRO were the true owners of the property.

26. In furtherance of the conspiracy, AKRAM ABDUL KARIM BERRO And JAMAL SAADALLAH BERRO, with the assistance of ALI ABDUL KARIM FARHAT and others, knowingly and fraudulently concealed that they were the true owners of the property located at 25800 Labana Woods, Taylor, Michigan from creditors and the bankruptcy trustee in connection with their bankruptcy case.

27. In furtherance of the conspiracy, HUSSEIN A. BERRO established multiple credit card accounts with a wide variety of banks, retailers, and other issuers of credit cards. HUSSEIN A. BERRO then systematically busted out those credit cards at Sigma and other establishments, presenting bogus checks and other forms of payment to falsely inflate the apparently available credit limit and then withdrawing the apparently available balance through cash advances and purchases of merchandise, never intending to pay for those charges to the credit cards.

28. Between approximately December 2001 and February 2002, ALI ABDUL KARIM FARHAT, HUSSEIN A. BERRO and other defendants and co-conspirators processed and caused to be processed approximately eleven transactions at Sigma on multiple credit cards of HUSSEIN A. BERRO, for a total amount in excess of $42,000, knowing that HUSSEIN A. BERRO never

14

intended to pay for those credit card charges.

29. In order to avoid payment and efforts by creditors to collect payment for these charges, HUSSEIN A. BERRO filed a petition for bankruptcy on June 28, 2002, in United States Bankruptcy Court for the Eastern District of Michigan and specifically requested relief from the balances owed on these credit cards.

30. In furtherance of the conspiracy, HUSSEIN A. BERRO sought to evade payment and collection efforts for balances owed on forty-six credit cards he had failed to pay or busted out by claiming those balances in his bankruptcy petition. As of the date of the bankruptcy filing, HUSSEIN A. BERRO had incurred and sought relief from an outstanding unpaid credit card debt of approximately $300,000, out of a total bankruptcy claim of approximately, $352,500.

31. On or about February 11, 2002, ALI ABDUL KARIM FARHAT made efforts to obtain cash from one of Sigma's merchant service providers, Woodforest National Bank, for fictitious purchases at Sigma charged to credit cards busted out by defendants and co-conspirators. By letter dated February 11, 2002, ALI ABDUL KARIM FARHAT contested Woodforest National Bank's discontinuation of the operation of Sigma's credit card machine, and its withholding of funds to cover credit card charges, including those made with credit cards of HUSSEIN A. BERRO, AKRAM ABDUL KARIM BERRO And JAMAL SAADALLAH BERRO that were busted out at Sigma by these defendants.

32. On or about February 11, 2002, in an effort to secure the release of funds from Woodforest National Bank for credit card charges at Sigma, ALI ABDUL KARIM FARHAT, with the assistance of HASSAN ABDUL KARIM FARHAT, submitted fraudulent invoices to Woodforest National Bank, to "document" the fictitious purchases processed through Sigma

15

credit terminals with credit cards held by HUSSEIN A. BERRO, AKRAM ABDUL KARIM

BERRO And JAMAL SAADALLAH BERRO and busted out by those defendants at Sigma.

33. On September 16, 2002, HUSSEIN A. BERRO had a telephone conversation with

ALI ABDUL KARIM FARHAT during which HUSSEIN A. BERRO complained about the hold

placed on the funds relating to charges on several credit cards that he had used at Sigma. During

that conversation, ALI ABDUL KARIM FARHAT reported to HUSSEIN A. BERRO on the

status of his efforts to obtain the release of the funds.

34. Between December 13, 2001 and December 30, 2001, ABDULAMIR BERRO,

AKRAM ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO and other defendants and

co-conspirators processed and caused to be processed approximately thirteen transactions at BDI

and BDI Budget Tel-Com on multiple credit cards of AKRAM ABDUL KARIM BERRO and

JAMAL SAADALLAH BERRO, for a total amount in excess of $14,000, knowing that AKRAM

ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO never intended to pay for those

credit card charges, each of which is set forth below and constitutes a separate overt act.

| | Account Holder | Credit Card | Credit Card Account No. | Date of Bogus Payment | BDI Charge Date and Amount | Date Payment Returned NSF | Amount of Loss |
|---|---|---|---|---|---|---|---|
| a. | Jamal Berro (joint account with Abdulam ir Berro) | American Express Corporate Optima | 3722-688404-11006 | 1/7/02 | 12/13/01, $900 | 1/4/02 | $10,925.30 |
| b. | Jamal Berro | First National Bank of Omaha | 4418-0290-0118-1731 | 12/21/01 | 12/13/01, $400 | 12/31/01 | $14,505.07 |

| | Account Holder | Credit Card | Credit Card Account No. | Date of Bogus Payment | BDI Charge Date and Amount | Date Payment Returned NSF | Amount of Loss |
|---|---|---|---|---|---|---|---|
| c. | Jamal Berro | Direct Merchants Bank | 5458-0001-9215-2110 | 12/21/01 | 12/13/01, $400<br><br>12/17/01, $2,650 | 12/21/01 | $13,411.79 |
| d. | Jamal Berro | The Edvance Card-Fleet | 5447-1700-2321-2963 | 12/27/01 | 12/13/01, $100 | 1/3/02 | $10,972.77 |
| e. | Jamal Berro | Capital One Mastercard | 5570-0917-0133-6488 | 12/27/01 | 12/13/01, $100<br><br>12/28/01, $698.70 at Budget Tele-Com | 1/10/02 | $4,335.14 |
| f. | Jamal Berro | MBNA America Bank | 5490-9937-8478-4292 | 1/17/02 - 1/31/02 (multiple) | 12/13/01, $400 | 1/17/02 - 2/8/02 | $16,288.68 |
| g. | Jamal Berro | Direct Merchant Bank | 5458-0001-9215-2100/5458-0001-9296-5834 | 12/21/01 | 12/13/01, $400<br><br>12/17/01, $2,560 | 1/4/02 | $12,935.03 |
| h. | Jamal Berro | American Express Optima | 3730-223494-81005 | 1/7/02 | 12/13/01, $1,100 at Budget Telecom, Inc. | 1/14/02 | $3,493.78 |
| i. | Jamal Berro | Citi Card | 5424-1803-9434-3872 | 12/27/01 | 12/15/01, $3,060 | 1/7/02 | $4471.35 |
| j. | Jamal Berro | Household Bank Gold Mastercard | 5408-0100-0783-0124 | 1/17/02 | 12/30/01, $1,420 | 1/25/02 | $2,089.22 |

35.  In furtherance of the conspiracy, AKRAM ABDUL KARIM BERRO and JAMAL

SAADALLAH BERRO sought to evade payment and collection efforts for these charges by

specifically requesting relief from the balances owed on these credit cards in their bankruptcy

petition.

36. In furtherance of the conspiracy, AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO, with the assistance of ABDULAMIR BERRO, knowingly and fraudulently concealed $128,000, as set forth in Count Fifty-Two, in contemplation of the filing by AKRAM ABDUL KARIM BERRO And JAMAL SAADALLAH BERRO of a bankruptcy petition under Title 11 of the Bankruptcy Code and in order to avoid the application of those funds to offset their debts in bankruptcy. AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO failed to disclose in connection with their bankruptcy case that they had received $128,000 in proceeds from the sale of their residence at 7510 Appoline, Dearborn, Michigan in April 2002.

37. ABDUL HALIM BERRO established multiple credit card accounts with a wide variety of banks, retailers, and other issuers of credit cards. During the course of the conspiracy, ABDUL HALIM BERRO systematically busted out those credit cards at BDI and other establishments, presenting bogus checks and other forms of payment to falsely inflate the apparently available credit limit and withdrawing the apparently available balance through cash advances and purchases of merchandise, never intending to pay for those charges.

38. Between January 15, 2002 and July 27, 2002, ABDULAMIR BERRO, ABDUL HALIM BERRO and other defendants and co-conspirators processed and caused to be processed forty-one transactions at BDI and Budget Tele-Com on multiple credit cards of ABDUL HALIM BERRO, for a total amount in excess of $60,000, knowing that ABDUL HALIM BERRO never intended to pay for those credit card charges, each of which is set forth below and constitutes a separate overt act:

18

| | Account Holder | Credit Card | Credit Card Account No. | Date of Bogus Payment | BDI Charge Date and Amount | Date Payment Returned NSF | Amount of Loss |
|---|---|---|---|---|---|---|---|
| a. | Abdul H. Berro | Citibank | 4128-0039-8457-1953 | 06/15/02 | 01/15/02 $1,582.60<br><br>02/05/02 $1,288.08<br><br>02/22/02 $275<br><br>03/04/02 $1,507.03<br><br>04/18/02 $180 | 06/20/02 | $8,575.98 |
| b. | Abou Hou Way Chane (joint account with Abdul Berro) | Capital One | 4791-2420-4277-0522 | 06/13/02 | 02/09/02 $2,155.02<br><br>06/17/02 $103 at BDI Tobacco Budget Tel<br><br>06/21/02 $25 at BDI Tobacco Budget Tel | 06/25/02 | $6,114.61 |
| c. | Abdulhali M. Berro | Capital One | 5291-0821-4058-3796 | 06/19/02 | 02/21/02 $305.20 at BDI Tele-Com<br><br>06/21/02 $35.26 at BDI Tobacco Budget Tel<br><br>06/26/02 $25 at BDI Tobacco Budget Tel | 07/02/02 | $1,124.88 |

19

| | Account Holder | Credit Card | Credit Card Account No. | Date of Bogus Payment | BDI Charge Date and Amount | Date Payment Returned NSF | Amount of Loss |
|---|---|---|---|---|---|---|---|
| d. | Abdul Berro | Citibank Associates Visa | 5491-4340-2004-5338 | 06/22/02 | 04/17/02 $600<br><br>06/14/02 $3,750<br><br>06/15/02 $1,500<br><br>06/25/02 $350 | 06/30/02 | $10,882.14 |
| e. | Abdul Berro | Peoples Bank MC | 4017-3500-0215-7222 | 06/24/02 | 04/17/02 $295<br><br>07/01/02 $3,850<br><br>07/01/02 $3,325 | 07/01/02 | $17,455.71 |
| f. | Abdulhaum Berro | Discover | 6011-0050-9068-2710 | 06/16/02 | 04/17/02 $265 | 06/25/02 | $15,147.67 |
| g. | Abou Hou Way Chane | Advanta | 5477-5389-6384-0006 | 06/19/02 | 04/17/02 $283<br><br>06/26/02 $275 at BDI Tobacco Budget Tel | 06/28/02 | $6,230.45 |
| h. | Abdul H. Berro | People's Bank | 5466-7470-0152-5635 | 06/24/02 | 04/17/02 $195<br><br>07/01/02 $3,350<br><br>07/01/02 $1,735 | 07/01/02 | $12,384.20 |
| i. | Abdul H. Berro | Wachovia | 4325-1570-0226-1699 | 06/23/02 | 04/18/02 $745 | 07/01/02 | $11,530.89 |
| j. | Abdul H. Berro | National City | 4311-9660-1300-3130/4311-9660-1739-5268 | 06/23/02 | 04/19/02 $500 | 07/09/02 | $11,283.02 |

| | Account Holder | Credit Card | Credit Card Account No. | Date of Bogus Payment | BDI Charge Date and Amount | Date Payment Returned NSF | Amount of Loss |
|---|---|---|---|---|---|---|---|
| k. | Abdul H. Berro | JP Morgan Chase | 5491-0416-6030-5805 | 06/17/02 | 04/19/02 $425<br><br>06/18/02 $2,350 | 06/25/02 | $7,395.31 |
| l. | Abdul Berro | First Card | 4366-1630-4278-8907 | 06/24/02 | 04/19/02 $435<br><br>06/26/02 $293 at BDI Budget Tel | 06/27/02 | $7,559.64 |
| m. | Abdul Berro | Citibank Associates | 4616-5703-2103-1239 | 06/14/02 | 04/19/02 $195<br><br>06/15/02 $975 | 06/21/02 | $7,220.72 |
| n. | Abdul Berro | Capital One-Kmart | 5397-0020-6550-7218 | 06/23/02 | 06/14/02 $4,480<br><br>06/15/02 $1,250 | 06/25/02 | $20,607.50 |
| o. | Abdulhaum Berro | Sears | 5121070165760584 | 06/24/02 | 06/14/02 $3,500<br><br>06/14/02 $3,400<br><br>07/01/02 $2,775<br><br>07/01/02 $1,850 | 07/05/02 | $17,036 |
| p. | Abdulhaum Berro | Capital One | 4388-6421-0884-7461 | 06/14/02 | 06/15/02 $430 | 06/26/02 | $1,038.47 |
| q. | Abdul Berro | GM Card | 5499-4409-0667-3970 | 06/19/02 | 06/20/02 $3,750 | 06/19/02 | $12,124.58 |
| r. | Abdul H. Berro | First Premier Bank | 5178-0070-9229-8124 | 07/26/02 | 07/27/02 $188.74 | 07/31/02 | $758.54 |

39.  In order to avoid payment and efforts by creditors to collect payment for these

charges, ABDUL HALIM BERRO filed a voluntary petition for bankruptcy on February 11, 2003 under Chapter 7 of Title 11, United States Code, in United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and specifically requested relief from the balances owed on forty credit cards, including the credit cards ABDUL HALIM BERRO busted out through BDI.

40. In furtherance of the conspiracy, ABDUL HALIM BERRO sought relief from an outstanding unpaid credit card debt of approximately $325,000, out of a total bankruptcy amount of approximately $421,120.

41. In furtherance of the conspiracy, ABDUL HALIM BERRO used credit cards he later busted out to pay the mortgage on the property located at 4926 Orchard, Dearborn, Michigan. ABDUL HALIM BERRO knowingly and fraudulently claimed in connection with his bankruptcy case that he had no real property and total assets of $1,000. ABDUL HALIM BERRO knowingly and fraudulently concealed in his bankruptcy case that he was, in fact, an owner of the property located at 4926 Orchard, Dearborn, Michigan and that he had received $95,000 in proceeds from the refinancing of that property.

42. BILAL EL-SABLANI established multiple credit card accounts with a wide variety of banks, retailers, and other issuers of credit cards. During the course of the conspiracy, BILAL EL-SABLANI systematically busted out those credit cards at Sigma, BDI and other establishments, presenting bogus checks to falsely inflate the apparently available credit limit and withdrawing the apparently available balance through cash advances and purchases of merchandise, never intending to pay for those charges.

22

43. Between January 16, 2001 and March 6, 2001, ABDULAMIR BERRO, BILAL EL-SABLANI and other defendants and co-conspirators processed and caused to be processed twenty-two transactions at BDI and Budget Tele-Com on multiple credit cards of BILAL EL-SABLANI, for a total amount in excess of $82,745, knowing BILAL EL-SABLANI never intended to pay for those credit card charges.

44. In order to avoid payment and efforts by creditors to collect payment for these charges, BILAL EL-SABLANI filed a voluntary petition for bankruptcy on December 18, 2001 under Chapter 7 of Title 11, United States Bankruptcy Code, in United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and specifically requested relief from the balances owed on the credit cards used at BDI.

45. In furtherance of the conspiracy, BILAL EL-SABLANI sought to evade payment and collection efforts for balances owed on twenty-three credit cards he had failed to pay or busted out by claiming those balances in his bankruptcy petition. As of the date of the filing of his bankruptcy petition, BILAL EL-SABLANI had incurred and sought relief from an outstanding credit card debt of approximately $240,000, out of a total bankruptcy amount of approximately $489,174.

46. NOURA BERRO and SAMI AHMAD BERRO established multiple credit card accounts with a wide variety of banks, retailers, and other issuers of credit cards. During the course of the conspiracy, NOURA BERRO and SAMI AHMAD BERRO systematically busted out those credit cards at BDI and other establishments, presenting bogus checks to falsely inflate the apparently available credit limit and withdrawing the apparently available balance through cash advances and purchases of merchandise, never intending to pay for those charges.

23

47. Between November 22, 1999 and February 7, 2001, NOURA BERRO and SAMI AHMAD BERRO and other defendants and co-conspirators processed and caused to be processed ten transactions at BDI on multiple credit cards of NOURA BERRO and SAMI AHMAD BERRO, for a total amount in excess of $13,700, knowing NOURA BERRO and SAMI AHMAD BERRO never intended to pay for those credit card charges.

48. In order to avoid payment and efforts by creditors to collect payment for these charges, NOURA BERRO filed a voluntary petition for bankruptcy on September 19, 2001, under Chapter 7 of Title 11, United States Code, in United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and specifically requested relief from the balances owed on the credit cards used to make transactions at BDI.

49. In furtherance of the conspiracy, NOURA BERRO and SAMI AHMAD BERRO sought to evade payment and collection efforts for balances owed on approximately fifteen credit cards they had failed to pay or busted out by claiming those balances in the bankruptcy petition filed by NOURA BERRO. As of the date of the filing of the bankruptcy petition, NOURA BERRO and SAMI AHMAD BERRO had incurred and sought relief from an outstanding credit card debt of approximately $98,000, out of a total bankruptcy amount of approximately $124,549.

50. ZEINAB BERRO and SADEK BERRO established multiple credit card accounts with a wide variety of banks, retailers, and other issuers of credit cards. During the course of the conspiracy, ZEINAB BERRO and SADEK BERRO systematically busted out those credit cards at BDI and other establishments, presenting bogus checks to falsely inflate the apparently available credit limit and withdrawing the apparently available balance through cash advances and purchases of merchandise, never intending to pay for those charges.

24

51. In furtherance of the conspiracy, ZEINAB BERRO and SADEK BERRO jointly filed or caused to be filed a voluntary petition for bankruptcy on August 29, 2001, under Chapter 7 of Title 11, United States Code, in United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and specifically requested relief from the balances owed on credit cards they had busted out.

52. In furtherance of the conspiracy, ZEINAB BERRO and SADEK BERRO sought to evade payment and collection efforts for balances owed on thirty-seven credit cards they had failed to pay or busted out by claiming those balances in their bankruptcy petition. As of the date of the filing of their bankruptcy petition, ZEINAB BERRO and SADEK BERRO had incurred and sought relief from an outstanding credit card debt of approximately $280,000, out of a total bankruptcy amount of approximately $554,878.

53. In furtherance of the conspiracy, SADEK BERRO, with the assistance of ALI ABDUL KARIM FARHAT and ABDULAMIR BERRO, knowingly and fraudulently concealed that SADEK BERRO was a true owner of property located at 7749 West Morrow Street, Dearborn, Michigan, in contemplation of the filing of bankruptcy by SADEK BERRO.

54. In furtherance of the conspiracy, SADEK BERRO, with the assistance of ABDULAMIR BERRO, knowingly and fraudulently concealed funds SADEK BERRO received from insurance companies in contemplation of the filing by SADEK BERRO of bankruptcy and in order to avoid any application of those funds to offset his and ZEINAB BERRO's debts to creditors in bankruptcy.

55. All in violation of Title 18, United States Code, Section 371.

25

## COUNTS TWO THROUGH TWENTY-FIVE
(18 U.S.C. §§ 1344, 2 – BANK FRAUD,
AIDING AND ABETTING)

D-1     ALI ABDUL KARIM FARHAT
     a/k/a Allen Farhat,
D-2     ABDULAMIR BERRO
     a/k/a Abe Berro, a/k/a "Abed",
D-4     AKRAM ABDUL KARIM BERRO,
D-5     JAMAL SAADALLAH BERRO,
D-7     ABDUL HALIM BERRO
     a/k/a Abdulhaum Berro,
D-8     BILAL EL-SABLANI,
D-9     NOURA BERRO,
D-11    ZEINAB BERRO,
D-12    SADEK BERRO
     a/k/a Sam Berro

    1. The General Allegations and Paragraphs 4-54 of Count One are incorporated into this

count by reference.

    2. On or about the dates set forth below in the Eastern District of Michigan, Southern

Division, defendants ALI ABDUL KARIM FARHAT, ABDULAMIR BERRO, AKRAM

ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO, ABDUL HALIM BERRO, BILAL

EL-SABLANI, NOURA BERRO, ZEINAB BERRO and SADEK BERRO devised and executed,

and aided and abetted each other and others known and unknown to the grand jury in devising and

executing, a scheme to defraud financial institutions and to obtain credits, moneys and other

property owned by, or in the custody or control of, federally insured financial institutions by

means of material false and fraudulent pretenses, representations and promises.

26

3.  As part of the scheme, defendants used credit cards or caused others to use credit cards at BDI and Sigma, with the assistance of ALI ABDUL KARIM FARHAT, ABDULAMIR BERRO and HASSAN ABDUL KARIM FARHAT, and at other establishments, and then knowingly submitted or caused to be submitted closed-account and insufficient funds checks to financial institutions as payment on credit card balances in order to defraud those financial institutions and to fraudulently obtain credit from them.

4.  All in violation of Title 18, United States Code, Sections 1344 and 2.

5.  Each of the following constitutes a separate count of this Indictment:

| Ct. | Defendant | Financial Institution | Credit Card Account Number | Date of Insufficient Funds Check | Amount of Insufficient Funds Check |
|---|---|---|---|---|---|
| 2 | Jamal Berro | Citibank Associates National Bank | 4018-0401-8064-4716 | 12/21/01 | $3,000.00 |
| 3 | Jamal Berro | Citibank Associates Gold Mastercard | 5418-8703-7023-4826 | 12/21/01 | $5,000.00 |
| 4 | Jamal Berro | First National Bank of Omaha | 4418-0290-0118-1731 | 12/21/01 | $6,400.00 |
| 5 | Akram Berro | First USA Bank | 4085-6700-0076-8283 | 12/20/01 | $8,000.00 |
| 6 | Akram Berro | National City Bank Visa | 4311-9660-1406-2838 | 12/27/01 | $5,500.00 |
| 7 | Akram Berro | The Edvance Card | 4305-5006-0202-7719 | 12/27/01 | $9,000.00 |
| 8 | Akram Berro | Citibank Platinum Visa | 5424-1805-2684-2684 | 12/27/01 | $4,000.00 |
| 9 | Abdul Halim Berro | Discover | 6011-0057-0062-0688 | 06/16/02 | $14,250.00 |
| 10 | Abdul Halim Berro | Advanta | 5477-5389-6384-0006 | 06/19/02 | $4,450.00 |

| 11 | Abdul Halim Berro | Citibank Associates Visa | 5491-4340-2004-5338 | 06/22/02 | $4,900.00 |
|----|----|----|----|----|----|
| 12 | Abdul Halim Berro | Wachovia | 4325-1570-0226-1699 | 06/23/02 | $5,750.00 |
| 13 | Abdul Halim Berro | National City | 4311-9660-1300-3130/4311-9660-1739-5268 | 06/23/02 | $6,750.00 |
| 14 | Abdul Halim Berro | Capital One-Kmart | 5397-0020-6550-7218 | 06/23/02 | $9,750.00 |
| 15 | Bilal El-Sablani | Fleet | 5491-0000-1901-8956 | 02/08/01 | $5,000.00 |
| 16 | Bilal El-Sablani | Citibank | 4128-0032-1308-2392 | 02/08/01 | $4,600.00 |
| 17 | Bilal El-Sablani | Peoples Bank | 4388-3201-0841-4208 | 02/13/01 | $7,500.00 |
| 18 | Noura Berro | Discover | 6011-3003-2800-1654 | 02/02/01 | $6,000.00 |
| 19 | Noura Berro | MBNA America | 5329-0005-9480-8852 | 02/05/01 | $4,000.00 |
| 20 | Noura Berro | First National Bank | 4418-0290-0095-9319 | 02/05/01 | $6,000.00 |
| 21 | Zeinab Berro | Peoples Bank | 5416-5100-0479-6764 | 03/23/01 | $9,800.00 |
| 22 | Zeinab Berro | Citibank | 5424-1800-7964-4354 | 04/05/01 | $12,600.00 |
| 23 | Sadek Berro | Bank of America | 5414-4131-0035-6637 | 05/16/00 | $6,500.00 |
| 24 | Sadek Berro | Citibank | 5410-6540-4737-4118 | 05/17/00 | $7,000.00 |
| 25 | Sadek Berro | Direct Merchants Bank | 5458-0040-1912-6125 | 05/21/01 | $800.00 |

## COUNTS TWENTY-SIX THROUGH THIRTY-ONE
### (18 U.S.C. §§ 157(1), 2 – BANKRUPTCY FRAUD, AIDING AND ABETTING)

D-4    AKRAM ABDUL KARIM BERRO,
D-5    JAMAL SAADALLAH BERRO,
D-6    HUSSEIN A. BERRO,
D-7    ABDUL HALIM BERRO
      a/k/a Abdulhaum Berro,
D-8    BILAL EL-SABLANI,
D-9    NOURA BERRO,
D-11   ZEINAB BERRO,
D-12   SADEK BERRO
      a/k/a Sam Berro

1. The General Allegations and Paragraphs 4-45 of Count One are incorporated into this count by reference.

2. From approximately March 1999 to January 2004, in the Eastern District of Michigan, Southern Division and elsewhere, defendants, AKRAM ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO, HUSSEIN A. BERRO, ABDUL HALIM BERRO, BILAL EL-SABLANI, NOURA BERRO, ZEINAB BERRO, SADEK BERRO, knowingly devised and executed, and aided and abetted each other and others known and unknown to the grand jury, in devising and executing, a scheme and artifice to defraud numerous issuers of credit cards.

3. From on or about March 1999 to on or about January 2004, defendants fraudulently charged, and permitted others to charge, to credit cards issued in their names and in the names of others more than $900,000 in cash advances, goods and services, for which they never intended to pay.

4. Defendants would submit, or permit others to submit, payments to the card issuer in the form of a check or other form of bogus payment, which they knew would not be honored

29

because it was drawn on an account with insufficient funds. In this manner, defendants would obtain additional credit on the card until the card issuers learned that the check or other form of payment would not be honored. The defendants would then fraudulently use, and permit others to use, the credit card to make additional purchases and obtain additional cash advances for which they did not intend to pay.

5. In order to execute the scheme and artifice to defraud creditors and in order to evade collection efforts by those creditors for their credit card debts, defendants, AKRAM ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO, HUSSEIN A. BERRO, ABDUL HALIM BERRO, BILAL EL-SABLANI, NOURA BERRO, ZEINAB BERRO, SADEK BERRO, on the dates noted below, signed and filed in United States Bankruptcy Court for the Eastern District of Michigan petitions under Title 11 of the United States Code, the Bankruptcy Code, claiming the approximate amounts noted below in debt, including credit card debt. Each filing noted below constitutes a separate count of this indictment.

| Ct. | Defendant | Date of Bankruptcy Petition Filing | Total Bankruptcy Amount | Amount of Credit Card Debt | Claimed Assets |
|-----|-----------|-----------------------------------|------------------------|---------------------------|----------------|
| 26 | Akram Berro Jamal Berro | 05/23/02 | $521,657.09 | $440,000.00 | $8,676.00 |
| 27 | Hussein A. Berro | 06/28/02 | $352,500.00 | $300,000.00 | $163,706.00 |
| 28 | Abdul Halim Berro | 02/11/03 | $421,120.00 | $325,000.00 | $1,000.00 |
| 29 | Bilal El-Sablani | 12/18/01 | $489,174.25 | $240,000.00 | $22,300.00 |
| 30 | Noura Berro | 09/19/01 | $124,549.77 | $120,000.00 | $2,500.00 |
| 31 | Zeinab Berro Sadek Berro | 08/29/01 | $554,878.34 | $280,000.00 | $208,700.00 |

6. All in violation of Title 18, United States Code, Sections 157(1) and 2.

## COUNT THIRTY-TWO THROUGH THIRTY-FIVE
### (18 U.S.C. § 1956 – MONEY LAUNDERING)

D-1     ALI ABDUL KARIM FARHAT
        a/k/a/ Allen Farhat
D-2     ABDULAMIR BERRO
        a/k/a Abe Berro, a/k/a "Abed"

1. The General Allegations are incorporated into this count by reference.

2. From May 24, 2001 through July 15, 2002, in the Eastern District of Michigan, Southern Division, ALI ABDUL KARIM FARHAT and ABDULAMIR BERRO knowingly conducted and attempted to conduct financial transactions knowing that the property involved in the transaction represented the proceeds from some form of unlawful activity and which did involve the proceeds of bank fraud, a specified unlawful activity within the meaning of Title 18, United States Code, Section 1956 (c)(1), with the intent to promote the specified unlawful activity, and knowing that the transactions were designed, in whole or part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity.

3. Each of the following financial transactions constitutes a separate count of this Indictment.

| Ct | Defendant | Financial Transaction | Account | Date of Financial Transaction | Amount |
|----|-----------|----------------------|---------|-------------------------------|--------|
| 32 | Ali Farhat | Withdrawal in form of check payable to Berro Enterprises | From Sigma Huntington National Bank account | 01/15/02 | $8,000 |
| 33 | Abdulamir Berro | Deposit of check | Into Berro Enterprises Bank One account | 01/17/02 | $8,000 |

31

| 34 | Ali Farhat | Withdrawal in form of check payable to BDI | From Sigma Huntington National Bank account | 01/22/02 | $6,688 |
| 35 | Abdulamir Berro | Deposit of check | Into BDI Bank One account | 01/23/02 | $6,688 |

4. All in violation of Title 18, Section 1956(a)(1).

## COUNTS THIRTY-SIX THROUGH THIRTY-SEVEN
### (18 U.S.C. § 1957)

D-1    ALI ABDUL KARIM FARHAT
     a/k/a/ Allen Farhat
D-2    ABDULAMIR BERRO
     a/k/a Abe Berro, a/k/a "Abed"

1. The General Allegations are incorporated into this count by reference.

2. On or about January 22, 2003, in the Eastern District of Michigan, Southern Division,

ALI ABDUL KARIM FARHAT and ABDULAMIR BERRO knowingly engaged in monetary

transactions in criminally derived property of a value greater than $10,000 and derived from

specified unlawful activity that took place within the United States, that is, proceeds of bank

fraud, in violation of Title 18, United States Code, Section 1344.

3. Each of the following financial transactions constitutes a separate count of this

Indictment.

| Ct | Defendant | Financial Transaction | Account | Date of Financial Transaction | Amount |
|---|---|---|---|---|---|
| 36 | Ali Farhat | Withdrawal in form of check payable to BDI | From Sigma Huntington National Bank account | 01/22/02 | $24,390 |

| 37 | Abdulamir Berro | Deposit of check | Into BDI Bank One account | 01/22/02 | $24,390 |
|----|-----------------|------------------|---------------------------|----------|---------|

4. All in violation of Title 18, United States Code, Section 1957.

## COUNT THIRTY-EIGHT
### (18 U.S.C. § 1956 -- MONEY LAUNDERING)

D-2    ABDULAMIR BERRO
       a/k/a Abe Berro, a/k/a "Abed"

1. The General Allegations are incorporated into this count by reference.

2. On March 27, 2002, in the Eastern District of Michigan, Southern Division, ABDULAMIR BERRO knowingly conducted and attempted to conduct a financial transaction, namely withdrawing approximately $3,222 from Berro Enterprises' Bank One account by means of a debit memorandum for deposit into the Bank One account of Daoud Faraj, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity and which did involve the proceeds of bank fraud, a specified unlawful activity within the meaning of Title 18, United States Code, Section 1956 (c)(1), with the intent to promote the specified unlawful activity, and knowing that the transaction was designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity.

3. All in violation of Title 18, Section 1956(a)(1).

33

## COUNTS THIRTY-NINE
### (18 U.S.C. § 1956 – MONEY LAUNDERING)

D-2     ABDULAMIR BERRO
        a/k/a Abe Berro, a/k/a "Abed"

1. The General Allegations are incorporated into this count by reference.

2. On July 19, 2002, in the Eastern District of Michigan, Southern Division,
ABDULAMIR BERRO knowingly conducted and attempted to conduct a  financial transaction,
namely withdrawing approximately $6,245 from Byblous Distribution Inc. Bank One account by
means of a debit memorandum for deposit into the Bank One account of Daoud Faraj, knowing
that the property involved in the transaction represented proceeds of some form of unlawful
activity and which did involved the proceeds of bank fraud, a specified unlawful activity within
the meaning of Title 18, United States Code, Section 1956 (c)(1), with the intent to promote the
specified unlawful activity and knowing that the transaction was designed, in whole or part, to
conceal and disguise the nature, the location, the source, the ownership, and the control of the
proceeds of the specified unlawful activity.

3. All in violation of Title 18, Section 1956(a)(1).

34

## COUNTS FORTY THROUGH FORTY-SIX
(18 U.S.C. § 1344 – BANK FRAUD)

D-1     ALI ABDUL KARIM FARHAT
        a/k/a Allen Farhat,
D-2     ABDULAMIR BERRO
        a/k/a Abe Berro, a/k/a "Abed,"
D-4     AKRAM ABDUL KARIM BERRO,
D-5     JAMAL SAADALLAH BERRO,
D-7     ABDUL HALIM BERRO
        a/k/a Abdulhaum Berro,
D-11    ZEINAB BERRO,
D-12    SADEK BERRO
        a/k/a Sam Berro,
D-13    AMIRA ALI FARHAT,
D-15    HOUDA MOHAMAD BERRO,
D-17    ALMIRE ALI-SADEK BERRO

1. The General Allegations and Paragraphs 4-54 of Count One are incorporated into this count by reference.

2. From approximately September 12, 2000 to October 14, 2002, in the Eastern District of Michigan, Southern Division and elsewhere, defendants, ALI ABDUL KARIM FARHAT, ABDULAMIR BERRO, AKRAM ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO, ABDUL HALIM BERRO, ZEINAB BERRO, SADEK BERRO, AMIRA ALI FARHAT, HOUDA MOHAMAD BERRO and ALMIRE ALI-SADEK BERRO, knowingly devised and executed, and aided and abetted each other and others known and unknown to the grand jury, in devising and executing, a scheme to obtain moneys or other property owned by, or in the custody or control of, federally-insured financial institutions by means of false and fraudulent pretenses, representations or promises.

| Ct. | Defendant | Property | Financial Institution | Mortgage Loan Account Number | Date of False Loan Application | Mortgage Loan Amount |
|-----|-----------|----------|----------------------|------------------------------|-------------------------------|----------------------|
| 40 | Amira Farhat Ali Farhat | 28500 Labana Woods Taylor, MI | World Savings Bank | 0019521525 | 10/14/02 | $197,250 |
| 41 | Abdulamir Berro Jamal Berro | 7510 Appoline Dearborn, MI | ABN AMRO Mortgage Group, Inc. | 615314463 | 05/07/01 | $125,000 |
| 42 | Akram Berro Jamal Berro | 7510 Appoline Dearborn, MI | ABN AMRO Mortgage Group, Inc. | 1010032688 (FHA 261-8013947/703 | 02/15/02 | $137,000 |
| 43 | Abdul Halim Berro Houda Berro | 4926 Orchard Dearborn, MI | ABN AMRO Mortgage Group, Inc. | 614455342 | 03/02/01 | $108,800 |
| 44 | Abdul Halim Berro Houda Berro | 4926 Orchard Dearborn, MI | ABN AMRO Mortgage Group, Inc. | 0622010341 | 02/14/02 | $124,000 |
| 45 | Sadek Berro Abdulamir Berro Almire-Ali Berro | 7749 West Morrow Dearborn, MI | ABN AMRO Mortgage Group, Inc. | 614796516 | 04/07/01 | $182,400 |
| 46 | Zeinab Berro | 7741 Calhoun, Dearborn, MI | Southport Bank | 7061162 | 09/12/00 | $180.000 |

3.  All in violation of Title 18, United States Code, Sections 1344 and 2.

**COUNT FORTY-SEVEN**
(18 U.S.C. §§ 1001, 2 - FALSE STATEMENTS,
AIDING AND ABETTING)

D-1    ALI ABDUL KARIM FARHAT
       a/k/a Allen Farhat
D-13   AMIRA ALI FARHAT

1.  On or about May 16, 2001, in the Eastern District of Michigan, Southern Division, ALI

36

ABDUL KARIM FARHAT and AMIRA ALI FARHAT did knowingly and willfully make, and aid and abet in making, false, fictitious, and fraudulent material statements and representations in a matter within the jurisdiction of the United States Department of Housing and Urban Development, a department of the executive branch of the government of the United States, in that in a Uniform Residential Loan Application for a Federal Housing Administration-insured loan for the purchase of property located at 6703 Woodmont, Detroit, Michigan, AMIRA ALI FARHAT, stated that she earned a monthly income of $2,792 working at Sigma Distribution, knowing the same to be false.

2. All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

### COUNT FORTY-EIGHT
(18 U.S.C. §§ 1001, 2 - FALSE STATEMENTS,
AIDING AND ABETTING)

D-1    ALI ABDUL KARIM FARHAT
       a/k/a Allen Farhat
D-13  AMIRA ALI FARHAT

1. On or about April 25, 2003, in the Eastern District of Michigan, Southern Division, ALI ABDUL KARIM FARHAT and AMIRA ALI FARHAT did knowingly and willfully make, and aid and abet in making, false, fictitious, and fraudulent material statements and representations in a matter within the jurisdiction of the United States Department of Housing and Urban Development, a department of the executive branch of the government of the United States, in that in a Uniform Residential Loan Application for a Federal Housing Administration-insured loan to refinance the property located at 6703 Woodmont, Detroit, Michigan, AMIRA ALI FARHAT stated that she was employed at Sigma Distribution, knowing the same to be false.

2. All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

37

## COUNT FORTY-NINE
(18 U.S.C. §§ 1001, 2  - FALSE STATEMENTS,
AIDING AND ABETTING)

D-2     ABDULAMIR BERRO
        a/k/a Abe Berro, a/k/a "Abed"
D-14    ABDUL KARIM AKRAM BERRO

1. On or about February 15, 2002, in the Eastern District of Michigan, Southern Division,

ABDULAMIR BERRO and ABDUL KARIM AKRAM BERRO did knowingly and willfully

make, and aid and abet in making, false, fictitious, and fraudulent material statements and

representations in a matter within the jurisdiction of the United States Department of Housing and

Urban Development, a department of the executive branch of the government of the United States,

in that in a Uniform Residential Loan Application for a Federal Housing Administration-insured

loan relating to the purchase of property located 7510 Appoline, Dearborn, Michigan, ABDUL

KARIM AKRAM BERRO stated that he earned a monthly income of $3900 working at BDI

Wholesale, knowing the same to be false.

2. All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT FIFTY
(18 U.S.C. §§ 1001, 2  - FALSE STATEMENTS,
AIDING AND ABETTING)

D-10    SAMI AHMAD BERRO
D-16    LINA REDA
        a/k/a/ LINA BERRO

1. On or about October 11, 2002, in the Eastern District of Michigan, Southern Division,

SAMI AHMAD BERRO and LINA REDA did knowingly and willfully make, and aid and abet in

making, false, fictitious, and fraudulent material statements and representations in a matter within

the jurisdiction of the United States Department of Housing and Urban Development, a

38

department of the executive branch of the government of the United States, in that in a Uniform

Residential Loan Application for a Federal Housing Administration-insured loan for the purchase

of property located at 6479 Hartwell, Dearborn, Michigan, LINA REDA a/k/a/ LINA BERRO

stated that she earned a monthly income of $5,277.37 working at a Subway restaurant, 8001

Gratiot Avenue, Detroit, Michigan, knowing the same to be false.

 2. All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT FIFTY-ONE
### (18 U.S.C. 1341 -- FRAUD BY COMMERCIAL CARRIER)

D-1 ALI ABDUL KARIM FARHAT
  a/k/a Allen Farhat

 1. On or about April 25, 2003, in the Eastern District of Michigan, Southern Division,

defendant ALI ABDUL KARIM FARHAT devised a scheme to defraud Shore Mortgage and to

obtain money by means of materially false and fraudulent pretenses, by providing false

information on loan documents to obtain a mortgage on a residential property located at 7546

Coleman, Dearborn, Michigan.

 2. It was part of the scheme that ALI ABDUL KARIM FARHAT provided false

information about the employment and income of the loan applicant.

 3. On or about April 28, 2003, in the Eastern District of Michigan, Southern Division,

ALI ABDUL KARIM FARHAT, for the purpose of executing the scheme and attempting to do

so, caused items to be sent and delivered through Federal Express, a commercial interstate carrier.

 4. All in violation of Title 18, United States Code, Section 1341.

39

## COUNT FIFTY-TWO
### (18 U.S.C. § 1956(h)- CONSPIRACY TO LAUNDER MONEY)

D-2    ABDULAMIR BERRO
       a/k/a Abe Berro, a/k/a "Abed"
D-4    AKRAM ABDUL KARIM BERRO
D-5    JAMAL SAADALLAH BERRO

1. The General Allegations are incorporated into this count by reference.

2. From February 15, 2002 to May 15, 2002, in the Eastern District of Michigan,

Southern Division, ABDULAMIR BERRO, AKRAM ABDUL KARIM BERRO and JAMAL

SAADALLAH BERRO did knowingly combine, conspire and agree with each other and persons

known and unknown to the grand jury to conduct financial transactions, knowing the funds

involved were proceeds derived from some form of unlawful activity, and which in fact involved

proceeds of bank fraud, a specified unlawful activity within the meaning of Title 18, United States

Code, Section 1956 (c)(1), with the intent to promote the specified unlawful activities and

knowing that the transactions were designed, in whole or part, to conceal and disguise the nature,

the location, the source, the ownership, and the control of the proceeds of the specified unlawful

activity.

3. In furtherance of the conspiracy and to accomplish its objects, ABDULAMIR BERRO,

AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO performed or caused to

be performed the following overt actions, among others:

        a.    On February 15, 2002, AKRAM ABDUL KARIM BERRO and JAMAL

              SAADALLAH BERRO used proceeds of a bank fraud associated with their

              sale of 7510 Appoline, Dearborn, Michigan to purchase an official check

              for $128,089.37 at Fifth Third Bank payable to Berro Enterprises.

b.      On February 15, 2002, ABDULAMIR BERRO deposited that official check into a Berro Enterprises account at Bank One.

c.      On February 21, 2002, ABDULAMIR BERRO withdrew funds from the Berro Enterprise Bank One account in the form of official checks payable to Metropolitan Title for the purchase of 22640 Kelly Road and 18700 Nine Mile Road, Eastpointe, Michigan.

d.      On February 28, 2002, ABDULAMIR BERRO transferred $70,000 from the Berro Enterprises Bank One account to Berro Enterprises Fifth Third account.

e.      From February 28, 2002 through May 7, 2002, ABDULAMIR BERRO and AKRAM ABDUL KARIM BERRO engaged in a number of financial transactions whereby ABDULAMIR BERRO withdrew from the Berro Enterprises Fifth Third approximately $48,000 in the form of checks made payable to AKRAM ABDUL KARIM BERRO.

f.      From May 10, 2002 to May 14, 2002, ABDULAMIR BERRO withdrew funds from the Berro Enterprises Fifth Third account in the form of checks for expenses associated with establishing a business, A & S Oil, for and on behalf of AKRAM ABDUL KARIM BERRO.

4. All in violation of Title 18, United States Code, Section 1956(h).

41

## COUNT FIFTY-THREE
### (18 U.S.C. § 1349- CONSPIRACY TO COMMIT BANK FRAUD)

D-1    ALI ABDUL KARIM FARHAT
      a/k/a Allen Farhat,

D-2    ABDULAMIR BERRO
      a/k/a Abe Berro, a/k/a "Abed,"

D-4    AKRAM ABDUL KARIM BERRO,

D-5    JAMAL SAADALLAH BERRO,

D-13  AMIRA ALI FARHAT

1. The General Allegations and Paragraphs 4-54 of Count One are incorporated into this count by reference.

2. From approximately October 2002 to March 8, 2005, in the Eastern District of Michigan, Southern Division and elsewhere, defendants, ALI ABDUL KARIM FARHAT, ABDULAMIR BERRO, AKRAM ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO, and AMIRA ALI FARHAT, did knowingly combine, conspire and agree with each other and persons known and unknown to violate Title 18, United States Code, Section 1344, Bank Fraud, by knowingly executing and attempting to execute a scheme and artifice to obtain money, funds, or other property owned by, or in the custody or control of, a federally insured financial institution by means of material false and fraudulent pretenses, representations and promises.

3. In furtherance of the conspiracy and to accomplish its objects ALI ABDUL KARIM FARHAT, ABDULAMIR BERRO, AKRAM ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO, and AMIRA ALI FARHAT performed or caused to be performed the following overt actions, among others:

      a.    On October 14, 2002, AMIRA ALI FARHAT made false representations in a mortgage loan application for the purchase of 25800 Labana Woods,

42

Taylor, regarding her use of that property as her primary residence, when, in fact, she was acting as a nominee buyer for AKRAM ABDUL KARIM BERRO and JAMAL SAADALLAH BERRO.

b.    In October 2002, AKRAM ABDUL KARIM BERRO participated in the negotiations for the purchase of the residence located at 25800 Labana Woods, Taylor, Michigan.

c.    On or about November 7, 2002, ABDULAMIR BERRO caused official checks to issue made payable to AMIRA ALI FARHAT for a total approximate amount of $23,000 for the purchase of the property.

d.    On November 12, 2002, World Savings Bank issued a mortgage loan for $197,250 to AMIRA ALI FARHAT and ALI ABDUL KARIM FARHAT based on information in the loan application, including false information relating to AMIRA ALI FARHAT's employment at and income from Sigma Distribution Inc.

4. All in violation of Title 18, United States Code, Section 1349.

## COUNT FIFTY-FOUR
(18 U.S.C. § 1956(h)- CONSPIRACY TO LAUNDER MONEY)

D-7    ABDUL HALIM BERRO
        a/k/a Abdulhaum Berro
D-15   HOUDA MOHAMAD BERRO

1. The General Allegations are incorporated into this count by reference.

2. From March 2001 to May 2002, in the Eastern District of Michigan, Southern Division, ABDUL HALIM BERRO and HOUDA MOHAMAD BERRO did knowingly combine,

43

conspire and agree with each other and persons known and unknown to conduct financial transactions, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity and which did involve proceeds of bank fraud, a specified unlawful activity within the meaning of Title 18, United States Code, Section 1956 (c)(1) and knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the above specified unlawful activities.

3. In furtherance of the conspiracy and to accomplish its objects, ABDUL HALIM BERRO And HOUDA MOHAMAD BERRO performed or caused to be performed the following overt actions, among others:

      a.    On April 11, 2001, HOUDA MOHAMAD BERRO obtained a mortgage loan from ABN AMRO Mortgage Group, Inc., for the purchase of property located at 4926 Orchard Avenue, Dearborn, Michigan, by submitting fraudulent information relating to her income, as alleged in Count Forty-Three, and incorporated herein by reference.

      b.    From May 2001 though April 2002, ABDUL HALIM BERRO used credit cards to make payments, through convenience checks and electronic payments, on the mortgage for 4926 Orchard, Dearborn, Michigan, in an amount exceeding $82,000, with credit cards he subsequently busted out, as alleged in Count 1 which, coupled with other payments reduced the mortgage owing to approximately $626 as of April 2002.

      c.    On April 4, 2002, HOUDA MOHAMAD BERRO refinanced the 4926

44

Orchard property and obtained a mortgage loan from ABN AMRO

Mortgage Group, Inc., in the amount of $124,000, by submitting fraudulent

information relating to her income, as alleged in Count Forty-Four, and

incorporated herein by reference.

d.      On April 4, 2002, Golden Title Insurance Agency, Inc. issued check

005130 drawn on its account at The Huntington National Bank and made

payable to HOUDA MOHAMAD BERRO for $19,542, representing the

proceeds of the mortgage obtained by fraud.

e       On April 9, 2002, Golden Title Insurance Agency, Inc. issued check 1-

23195 drawn on its account at The Huntington National Bank and made

payable to HOUDA MOHAMAD BERRO for $100,835.94, representing

the proceeds of the mortgage obtained by fraud.

f.      On April 15, 2002, HOUDA MOHAMAD BERRO deposited the two

checks issued by Golden Title Insurance Agency, Inc. into her Huntington

Bank  account, number 02383200952.

g.      On April 17, 2002, HOUDA MOHAMAD BERRO withdrew the money

from the Huntington Bank account in the form of a check, number 168, for

$95,000 made payable to Halime Berro.

h.      On April 17, 2002, the check for $95,000 issued off of HOUDA

MOHAMAD BERRO's account and made payable to Halime Berro was

endorsed and deposited into a Charter One bank account, number

3640622609, in the name of Halime Berro.

45

i.      On May 23, 2002, the money was withdrawn from the Charter One account of Halime Berro in the form of a check, number 132, for $95,000 made payable to ABDUL HALIM BERRO.

j.      On May 22, 2002, ABDUL HALIM BERRO deposited the $95,000 check into his Huntington bank account, number 02380635449.

k.      On May 28, 2002, ABDUL HALIM BERRO caused $95,000 to be transmitted by means of wire from his Huntington Bank account to an account at the Jammal Trust Bank in Beruit Lebanon.

4. All in violation of Title 18, United States Code, Section 1956(h).

## COUNT FIFTY-FIVE
### (18 U.S.C. § 1956- MONEY LAUNDERING)

D-7    ABDUL HALIM BERRO
       a/k/a Abdulhaum Berro

1. The General Allegations are incorporated into this count by reference.

2. On May 28, 2002, in the Eastern District of Michigan, Southern Division, ABDUL HALIM BERRO transmitted and transferred by wire approximately $95,000 from his bank account at Huntington National Bank in Dearborn, Michigan, to a place outside the United States, namely Beirut, Lebanon, knowing that the funds involved in that transmission and transfer represented the proceeds of some form of unlawful activity, namely bank fraud, in violation of Title 18, United States Code, Section 1344, and knowing that such transmission and transfer was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

46

3. All in violation of Title 18, United States Code, Section 1956(a)(2).

**COUNT FIFTY-SIX**
(18 U.S.C. § 1956(h)- CONSPIRACY TO LAUNDER MONEY)

D-2    ABDULAMIR BERRO
     a/k/a Abe Berro, a/k/a "Abed"
D-12   SADEK BERRO
     a/k/a Sam Berro

1. The General Allegations are incorporated into this count by reference.

2. From March 31, 2001 to June 15, 2001, in the Eastern District of Michigan, Southern Division, ABDULAMIR BERRO and SADEK BERRO did knowingly combine, conspire and agree with each other and persons known and unknown to the grand jury to conduct financial transactions, knowing the funds involved were proceeds derived from some form of unlawful activity, and in fact involved proceeds of bankruptcy fraud, 18 U.S.C. § 152, a specified unlawful activity within the meaning of Title 18, United States Code, Section 1956 (c)(1), knowing that the transactions were designed, in whole or part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the above specified unlawful activity.

3. In furtherance of the conspiracy and to accomplish its objects, ABDULAMIR BERRO and SADEK BERRO performed or caused to be performed the following overt actions, among others:

    a.    From March 31, 2001 through June 14, 2001, ABDULAMIR BERRO deposited funds into BDI's Bank One account in the form of checks made payable to SADEK BERRO that had been issued by insurance companies.

47

    b.    On June 15, 2001, ABDULAMIR BERRO withdrew funds from BDI's

Bank One account in the form of a check for $27,400 and made payable to

ALMIRE ALI BERRO, SADEK BERRO's son.

4. All in violation of Title 18, United States Code, Section 1956(h).

**COUNT FIFTY-SEVEN**
(18 U.S.C. §§982(a)(1) and (2)(A), 981(a)(1)(C) and 28 U.S.C. §2461(c)
FORFEITURE)

1. Upon conviction of one or more of the offenses alleged in Counts One through

Twenty-five, Forty through Forty-six, Fifty-one and Fifty-three of this Indictment, Defendants

ALI ABDUL KARIM FARHAT,  ABDULAMIR BERRO, HASSAN ABDUL KARIM

FARHAT, AKRAM ABDUL KARIM BERRO, JAMAL SAADALLAH BERRO,  ABDUL

HALIM BERRO, BILAL EL-SABLANI, NOURA BERRO, SAMI AHMAD BERRO, ZEINAB

BERRO,  SADEK BERRO, AMIRA ALI FARHAT, HOUDA MOHAMAD BERRO, and

ALMIRE ALI-SADEK BERRO shall forfeit to the United States pursuant to 18 U.S.C.

§982(a)(2)(A), 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c) any property constituting or

derived from proceeds obtained directly or indirectly as a result of said violations, including, but

not limited to:

    A. Real Property

        i) The proceeds from the sale of particular property, totaling  $72,621.11, located

at 25800 Labana Woods, Taylor, Wayne County, Michigan, and more fully described as:

        Lot 51, Labana Woods Subdivision, as recorded in Liber 115, Pages
        96 through 103, both inclusive, of Plats, Wayne County Records,

which proceeds are being held in escrow by the United States Marshals Service for the Eastern District of Michigan; and,

      ii) Real property, including all buildings, fixtures, improvements, and appurtenances, commonly known as 4926 Orchard, Dearborn, Wayne County, Michigan, titled in the name of Houda and Rami Berro, and more fully described as:

      Lot 99 and ½ Adjacent Vacated Alley, Orchard Boulevard Subdivision as Recorded in Liber 33, Page 13 of Plats, Wayne County Records.

      82-10-081-29-033.

B. A sum of money in United States currency, representing the amount of proceeds obtained as a result of the charged bank fraud offenses, mail fraud offenses, and conspiracies to commit bank and mail fraud, for which the defendants are jointly and severally liable.

    2. Upon conviction of one or more of the money laundering offenses alleged in Counts Thirty-two through Thirty-five, Thirty-six through Thirty-seven, Thirty-eight, Thirty-nine, Fifty, Fifty-two, Fifty-four, Fifty-five, and Fifty-six of this Indictment, Defendants ALI ABDUL KARIM FARHAT, ABDULAMIR BERRO, JAMAL SAADALLAH BERRO, ABDUL HALIM BERRO, HOUDA MOHAMAD BERRO and SADEK BERRO shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), the following property:

    A. All right, title or interest in any and all property involved in defendants' offenses in violation of 18 U.S.C. §§1956 or 1957, for which the defendant is convicted, and all property traceable to such property, including the following: (1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956 or 1957; (2) all commissions, fees and other property constituting proceeds obtained as a result of

these violations; and (3) all property used in any manner or part to commit or to facilitate the commission of these violations, including but not limited to the following:

i) Real property, including all buildings, fixtures, improvements, and appurtenances, commonly known as 24512 Michigan Avenue, Dearborn, Wayne County, Michigan, titled in the name of Allen Farhat, and more fully described as:

> Lots 1873 and 1874 of Hannan's Dearborn Hills Subdivision No. 5, as recorded in Liber 51, Page(s) 77 of Plats, Wayne County Records
>
> 82-09-204-08-013

ii) Real property, including all buildings, fixtures, improvements, and appurtenances, commonly known as 4926 Orchard, Dearborn, Wayne County, Michigan, titled in the name of Houda and Rami Berro, and more fully described as:

> Lot 99 and ½ Adjacent Vacated Alley, Orchard Boulevard Subdivision as Recorded in Liber 33, Page 13 of Plats, Wayne County Records.
> 82-10-081-29-033.

B. A sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount of money involved in such offense.

3. If any of the forfeitable property described in paragraphs 1 and 2, as a result of any act or omission of the defendant(s):

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;