**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

                    **Plaintiff,**

     **v.**                                          **Case No:  04-80370-17**
                                                     **Hon. John Corbett O'Meara**

**ALMIRE ALI-SADEK BERRO,**

                    **Defendant.**
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

## STATEMENT OF FACTS

On June 1, 2001, Mr. Berro, at age 22, signed his name to a mortgage application that did not accurately reflect his income in an effort to obtain a mortgage for the purchase of a home in Dearborn, Michigan.  This is the only allegation made against Mr. Berro in the First Superseding Indictment.  There is no restitution in this case because there was no loss to the financial institution. Once the mortgage was obtained, payments were made in a satisfactory fashion.  For this one criminal act, to which he pled guilty, he will have a criminal record for the rest of his life.

## SENTENCING FACTORS

Mr. Berro's sentencing guideline range is 10 to 16 months.  There were no aggravating factors.  The only reason Mr. Berro's guideline range is beyond probationary consideration is the amount of the mortgage received for the purchase of the home.  The Court is aware that pursuant to United States v. Booker **125 S Ct 738 (2005)**.  The United States Sentencing Guidelines are now advisory.  This requires this honorable

court to consider this guideline range in fashioning and individualized sentence when

considered with other statutory factors found in 18 USC 3553(a).

Subsection (a) of 18 USC 3553(a) states:

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

Mr. Berro's crime was part of many crimes committed by the principles in this

case. Unfortunately these principles are the people closest to him, his family. His father,

his mother, his uncles, his aunts, and his cousins. While Mr. Berro has stipulated in his

Rule 11 Agreement that his actions were part of a scheme to defraud Mortgage Group

Inc., his participation was not as a planner or organizer. His participation was

as a son, and nephew. He did what was asked of him, even though he knew it was

wrong. He never gained monetarily from his participation. In his mind, as a result of the

culture in which he was raised, it would have been disrespectful to refuse. As a result the

government has refused to recognize the true nature of his participation. He was not

charged in this case, until his father and uncles refused to plead guilty. Then, rather than

recognize his individual role in this case and his individual characteristics, he was linked

to every other plea agreement without distinction. Although offered diversionary status,

a reasonable and appropriate recognition of his role, the offer was conditioned upon his

family pleading guilty. Ultimately, they did, but he was not given the diversion because

of an artificial deadline. Mr. Berro admitted his guilt, and he will pay his debt to society.

However, it is this counsel's opinion that the government should be chastised by the

court for its refusal to distinguish between the children's role in this case, and their

parents. The government's arrogance in this respect only fuels the impression within the

Arabic community that the government refuses to differentiate between those Middle

Eastern people who try and live within the bounds of society, and those who refuse to do so.

Mr. Berro is a young man with aspirations.  He has assimilated into American society by succeeding in education, gainful employment, citizenship, and fiscal Responsibility.  During these trying times he earned a Masters Degree in Business Administration.  He worked full time and attended school.  He never involved himself in any other aspect of this case.  Unfortunately, his family used him.  This is something he will have to ponder throughout his lifetime.  As indicated in his Presentence Report, Mr. Berro has been employed since a very young age.  He has offered his services as a substitute teacher in the Dearborn School District and has volunteered his time to help his community.

**(2)** the need for the sentence imposed--
**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Mr. Berro recognizes that he must be punished for his actions.  Although there is no victim in this case because his mortgage was paid in a timely fashion and no loss was sustained, he knows now that his role played an important part in the other crimes committed by his family.  This is a far cry from having prior knowledge of the other activities alleged in the indictment.  He was never been involved in any other criminal activity, and never sought to question his parent's activities.  He does not disrespect the law, and has never exhibited antisocial behavior.  To the contrary, Mr. Berro has always tried to make progress through legitimate employment and educational opportunities.  Therefore, it cannot be said that there is a need to protect society from Mr. Berro.  However some deterrence is necessary.  In this respect, we encourage the court to consider that regardless of what sentence the court imposes, the fact that Mr. Berro will now have a criminal record, will follow him forever.  Currently, Mr. Berro is trying to

obtain gainful employment after earning his Masters Degree.  The disclosure of his crime has substantially affected his ability to achieve his goals.  He has already been denied many opportunities.  Therefore, the lesson and effect of deterrence has begun and will continue throughout his lifetime.  Under these circumstances a just punishment would be to restrict Mr. Berro's liberty through alternatives to incarceration.

**(3)** the kinds of sentences available;

The court, in light of Booker and the cases that have followed, possesses the discretion and creativity to fashion a sentence. From straight probation, to home confinement, to a split sentence, to incarceration, or a combination of these choices.  The only criteria is that the sentence be "sufficient but not greater than necessary to comply with the purposes of 18 USC 3553(a)(2)."  United States v Foreman, infra.  Our Sixth Circuit has provided great latitude.  Although it has been said that the guideline range is "presumptively reasonable"; United States v. Leonard Williams 436 F 3d 706 (6th Cir, Jan 31, 2006), Judge Martin disagreed in United States v. Foreman, 436 F3rd 638 (6th Cir. Feb 8, 2006), where he addressed the "presumption of reasonableness":

> "although this statement seems to imply some sort of elevated stature
> to the Guidelines, it is in fact rather unimportant.  Williams does not mean
> that a sentence outside of the guidelines – either higher or lower—is
> presumptively unreasonable; it is not……. It must be sufficient but not greater
> than necessary to comply with the purposes of 18 USC 3553(a)(2).
> "Reasonableness" is an appellate standard of review in judging whether a District
> Court has accomplished the task."

Many Sixth Circuit cases have determined that a Guidelines sentence is not per se "reasonable" United States v. Webb 403 F3rd 373 (6th Cir, 2005); United States v. Richardson 437 F3rd 350 (6th Cir. Feb 13, 2006); United States v. Daniel Morris (448 F3rd 929 (6th Cir, May 19, 2006).

The predominant characteristic of all appellate decisions is the necessity of the District Judge to consider all of the 3353(a) factors, and articulate the reasons for the imposition of sentence.

Of special instructive significance is United States v. Collington 461 F3r 805 (6th Cir. August 31, 2006), where Mr. Collington's Guideline range was 188 to 235 month.

The following is an excerpt of the opinion, in part:

Collington pled guilty to possession of over fifty grams of crack cocaine with the intent to distribute, being a felon in possession of a firearm, and unlawful possession of a machine gun,. The plea agreement anticipated that offense level would be thirty-three and his criminal history to be a III, yielding an advisory guidelines range of 168 to 220 months. Upon review of the presentence report, the district court decided that Collington's offense level was thirty-three and his criminal history was a IV, resulting in an advisory guidelines range of 188 to 235 months.

At Collington's sentencing hearing, the district court undertook what it described as a "three-step process." The first step was to calculate the appropriate advisory guideline range, which the district court did with no objection from either side to the resulting range of 188 to 235 months. The district court then proceeded to the second and third steps of its analysis: determining whether a variance from the guidelines range would be appropriate in this case and considering the 3553 factors and the guidelines range to determine what sentence would be a "reasonable sentencing option [ ] for this Defendant."

To aid the court in its decision-making process, it heard from Collington's counsel and then questioned Collington regarding his personal history and the severity of the crimes in question. The court then decided to vary downward from the sentencing guidelines and impose a 120 month sentence with the full five-year period of supervised release. The court felt that a downward variance was justified given Collington's personal history, his criminal history, and his age. The government now appeals that sentence as being unreasonably low.

In reviewing the reasonableness of the court's sentence upon appeal by the

government, the court upheld the sentence indicating that:

We review sentences for reasonableness. *United States v. Webb,* 403 F.3d 373, 383 (6th Cir.2005). At the outset, it is worth noting that the district court in this case and the government in its brief to this Court confused the statutory mandate with the appellate standard of review. "[A] district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task." *United States v. Foreman,* 436 F.3d 638, 644 n. 1 (6th Cir.2006) (emphasis in original).

In *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court invalidated the mandatory use of the Sentencing Guidelines and held they are now "effectively advisory." We have held that "[o]nce the appropriate advisory Guideline range is calculated, the district court throws this ingredient into the section 3553(a) mix." *United States v. McBride,* 434 F.3d 470, 476 (6th Cir.2006). Section 3553(a) instructs a district court to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [section 3553(a)(2) ]." 18 U.S.C. § 3553(a). The 3553(a)(2) factors which are to be considered when sentencing are the seriousness of the offense, deterrence of future crimes, protection of the public from future crimes of the defendant, and providing the defendant with needed training or correctional treatment. [FN1] 18 U.S.C. § 3553(a)(2).

FN1. The district court, in sentencing, should also consider the nature and circumstances of the offense, the characteristics of the defendant, the kinds of sentences available, the sentencing guidelines range, policy statements from the Sentencing Commission, the need to avoid sentencing disparities, and the need to provide restitution to the victims. *See* 18 U.S.C. § 3552(a)(1), (3)-(7).

Because the Sentencing Guidelines are now advisory, a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of section 3553(a). *See McBride,* 434 F.3d at 476. Although we have held that a sentence within the guidelines is presumptively reasonable, *see United States v. Williams,* 436 F.3d 706, 708 (6th Cir.2006), this says nothing about sentences outside the advisory range. As we said in *Foreman,* " *Williams* does not mean that a sentence outside of the Guidelines range-either higher or lower-is presumptively *un*reasonable. It is not." 436 F.3d at 644. Rather, our reasonableness review is in light of the 3553(a) factors which the district court felt justified such a variance.

[We have now split our reasonableness review into two inquiries: procedural reasonableness and substantive reasonableness. A sentence may be procedurally unreasonable if "the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Webb,* 403 F.3d at 383. A sentence may be considered substantively unreasonable when the district court "select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *Id.* at 385. It is in this light that we review Collington's sentence, specifically the district court's downward variance from the advisory guidelines range.

[The district court, in this case, varied downward from the guideline range of 188 to 235 months to give Collington a sentence of 120 months.[FN2] The district court explained at the sentencing hearing that such a variance was justified in this case because of a number of factors which made Collington's case an outlier and which the guidelines did not account for. The district court found that, despite Collington's criminal history being at a IV, Collington "has never been in custody for any substantial period of time," having only been imprisoned for seven months before this crime. The district court also noted that the criminal history did not reflect that this incident was the first time that this quantity of drugs and guns had been found in Collington's possession.

FN2. The dissent notes that this variance is 36% below the low end of the guidelines range. Dissent Opn. at 811, 817. Such analysis has no place in a review for reasonableness. There is no mathematical percentage or formula that defines what reasonableness is. Appellate review simply can not be reduced to such cold calculations. It is those very calculations that *Booker* and its progeny attempted to remove from the federal sentencing process.

As we have explained before, "[p]rior to Booker, sentences outside of the Guideline range were severely limited; now, 'with greater latitude' a 'district court need only consider [the Guideline range] along with its analysis of the section 3553(a) factors.' " *United States v. Martin,* 438 F.3d 621, 641 (6th Cir.2006) (Martin, J., concurring) (quoting *McBride,* 434 F.3d at 476). Additionally,

[i]n appropriate cases ⋯ a district court may conclude that the criminal history category overstates the severity of the defendant's criminal history or *809 that a lower sentence would still comply with and serve the mandates of section 3553(a). That is, a district court may look beneath the specific criminal history score and advisory guideline calculation to reach the appropriate sentence. *Id.* at 642.

## <u>CONCLUSION</u>

For the reason set forth herein Mr. Berro respectfully requests this court to consider imposing a one-day term of incarceration suspended and supervised release. To do so would be a minimal deviation from the advisory guideline range. He is not a threat to society, his criminal conviction will act as a necessary deterrent. We believe such a sentence will reflect the seriousness of the offense, promote respect for the law and result in a just punishment. In this case the government refused to view Mr. Berro as an individual. They overzealously persecuted him as though he were a contaminated offspring. In this respect counsel for Mr. Berro is embarrassed of his government's current treatment of the Arabic community. As a Dearborn practitioner counsel has a unique perspective to observe the overreaching power of the government against its citizens in this area. Therefore it is with great respect for this Court that Mr. Berro asks the court to only consider the seriousness of his involvement, his personal achievements, his personal characteristics, and the impact this conviction will forever have on his life.

Respectfully submitted,

/s/ Nicholas J. Vendittelli
_____
Nicholas J. Vendittelli P 30770
Attorney for Defendant
6053 Chase Road
Dearborn, Michigan 48126
313 565 2400

November 24, 2006                    njvendi@comast.net